## 7862

### STATE v. BABB.

1. CHARGE AS TO SELF-DEFENSE as applied to two on a road, one getting out of his buggy and meeting the other as he comes up on the side of the road and shooting him sustained. The term "paths" objected to as used by the Court, *held* to mean *paths of opportunity* and not *ways of travel.*

2. IBID.—There being no evidence tending to show the road in question was not open for travel by the public, the request that a man on his own premises is not called on to retreat is a mere abstract proposition of law, and its refusal not error.

3. THE DOCTRINE OF REASONABLE DOUBT having been properly charged, it was not error to refuse the request, "If the evidence tending to support the plea of self-defense should fall short, yet if it raises a reasonable doubt upon the whole question, that the jury should acquit him."

4. REHEARING refused.

Before GARY, J., Greenville, September term, 1910. Affirmed.

Indictment against Tully Babb for murder. Defendant appeals.

*Messrs. Cothran, Dean & Cothran,* for appellant, cite: *Rights of a man who has been threatened:* 48 So. 258; 6 So. 482; 12 Pac. 783; Clark Cr. L. 141; 155 U. S. 271. *What acts will bar plea of self-defense:* 21 Cyc. 807; 25 Ency. 266; Clark Cr. L. 187; 24 S. C. 285; 33 S. C. 594; 68 S. C. 133; 75 S. C. 510; 78 S. C. 96; 60 Ala. 26; 85 S. C. 102; 55 S. C. 36. *The choice of paths:* 1 Bish. Cr. L., sec. 847. *One on his own premises is not bound to retreat when attacked:* 79 S. C. 144; 72 S. C. 199. *The request as to reasonable doubt is not covered by the charge:* 38 S. C. 333; 66 S. C. 454; 76 S. C. 91; 78 S. C. 101; 79 S. C. 127.

*Solictor P. A. Bonham,* contra.

The opinion in this case was filed on February 23, 1911, but remittitur held up on petition for rehearing until

April 17, 1911. The opinion of the Court was delivered by

MR. JUSTICE WOODS. The defendant Tully Babb, having shot to death T. W. Knight, and having been convicted of manslaughter, appeals from the judgment on the ground that the Circuit Judge gave to the jury erroneous instructions as to the law of self-defense.

Knight had been for some time incensed either because of his suspicion of improper intimacy between the defendant and one of his daughters or because of some other real or fancied injury; and there was evidence that he had made threats to Babb himself as well as to others that he would kill Babb by cutting him with a knife. There was also evidence that Babb had made threats against Knight. On Sunday, the twelfth day of June, 1910, Babb, having his wife in the buggy with him, started out to make a visit. Driving along a neighborhood road running through Babb's own lands, as they were passing the house of one Oxner, they observed Knight near the roadside in conversation with

Newt McKinney who had stopped in passing. Knight, who was under the influence of liquor and who had in one hand a bottle of whiskey and in the other a knife, accosted Babb, saying that he wished to talk with him. Babb replied that he did not wish to have any trouble and that he supposed the matter between them had been settled. As Knight approached, Babb got out, went to the back of the buggy and warned Knight not to advance on him. Babb was in the road, which was narrow, and Knight, having taken off his coat, was at the roadside, on an elevated bank about two feet high with a gradual slope into the road, near enough to spring upon Babb. In this situation Babb shot three or four times. Knight walked back to Oxner's house and a few days afterwards died of his wounds.

On the important point as to whether Knight was standing still or advancing on Babb threatening to cut him to pieces when Babb shot, the evidence was conflicting. Witnesses for the State testified that Babb got out of the buggy against the entreaty of his wife, who insisted that they should drive away from the scene. Babb testified that he feared Knight would shoot him from the rear if he drove away. While the road was over the lands of Babb, there is not a particle of evidence that he claimed any special right to travel it or to exclude others from it. There was conflict in the evidence as to other less material points, but the foregoing statement is sufficient to indicate that the issue before the jury was whether the defendant shot Knight with malice, or in sudden heat and passion upon sufficient legal provocation, or in self-defense. Manifestly in passing on the plea of self-defense the main inquiries before the jury as to the facts were: First, did Babb get out of his buggy and go to meet Knight having reasonable apprehension that if he proceeded on his journey he would be shot from the rear, or did he get out for the lawful purpose of trying to placate Knight, or did he get out in acceptance of Knight's invitation to a hostile encounter? Second, even if Babb was

justifiable in getting out of the buggy either to protect him-
self or to placate Knight, did he shoot Knight while he was
advancing upon him in such a threatening manner and with
such a weapon that he had good reason to apprehend and
did apprehend that he would be killed or suffer serious
bodily harm? Third, did he have a reasonable means of
escape by retreating?

In view of these issues the main question is whether there
was any error in the charge on the subject of self-defense.
The exceptions are so numerous and elaborate that
in order to consider them without excess of detail it
is necessary to set out in full the following extract
from the charge containing the instructions alleged to be
erroneous.

"Now another proposition of law is this: that a man who
expects to be attacked should first employ the means to avoid
the necessity of self-defense, and until he has done this, his
right of self-defense does not exist. The law says that if
one expects to be assaulted and has two paths, one leading
to the attack and the other leading from it, he must avail
himself of the one leading from it, if while so doing he can
reasonably avoid the necessity of resorting to it. And if
he does not, he puts himself in a position that he cannot
plead self-defense. If two courses are open to him and by
reasonably taking that course by which he would avoid the
necessity of the attack, or conflict, or killing, and he volun-
tarily takes the other course and puts himself in a position
where it then becomes necessary for him to defend himeslf,
he cannot be said to be without fault in bringing on the
difficulty, and his plea of self-defense under those circum-
stances would not hold. It is under that proposition of law
that a conflict of blood must be avoided if a party can
reasonably do so, and thereby avoid the fight.

"If you come to the conclusion that the defendant drove
up on the highway and accepted or sought a threatened
attack upon him, and that pursuing the tenor of his way he

could have reasonably avoided it, and voluntarily put himself in the way of the attack, he could not under those circumstances plead self-defense. And that is where we get the expression in the law of self-defense, that before it is available one must show that he had no other probable means of escape. The old law was that he had to flee to the wall. Our law is that he must show that he had no other means of escape.

"Now, it is for you to say, did he believe that he was in danger of losing his own life or of sustaining serious bodily harm? If it was necessary for him to shoot the deceased or if he was without fault himself in not availing himself of any probable means of escape, by which he might have avoided the conflict? Did he believe it was necessary for him to shoot under the circumstances to save his own life, or to save himself from serious bodily harm, if he had no other probable means of escape?

"The question of fact you get from the mouths of the witnesses, how did this difficulty come about? Did it appear to a man of ordinary firmness and reason that by taking a different course he could have avoided it? If there was a reasonable course presented to him, then, a reasonable man should have taken it, and a reasonable jury must believe that there was no reasonable way of avoiding the difficulty before he can sustain his plea of self-defense."

The first position of appellant's counsel that these instructions conveyed to the jury the idea that a man should not go about his usual business or travel his accustomed road if he has reason to apprehend meeting an enemy who may attack him is wholly untenable. The record does not show that any question was made of the legal right of the defendant to travel the road he was on, nor was there any evidence whatever that he had any reason to anticipate meeting Knight at Oxner's house. Therefore it must have been obvious to the jury that when the Judge said of two paths, one leading to a difficulty and the other away from it, the

duty is to take the latter, he did not mean to make any reference to the actual road that the defendant was traveling, but used the word paths in a figurative sense to denote a course of conduct—in the sense of paths of opportunity, not of actual roads. In other words, it is quite clear that the entire extract from the charge above quoted related to the conduct of the defendant at the place of the homicide, for there was no issue as to the right to travel the road. Indeed, the right of the defendant to go the even tenor of his way is expressed by the Judge in the words we have italicized in this sentence: "If you come to the conclusion that the defendant drove up on the highway and accepted or sought a threatened attack upon him, *and that by pursuing the tenor of his way he could have reasonably avoided it,* and voluntarily put himself in the way of the attack he could not under those circumstances plead self-defense."

Further elaboration does not seem necessary to make it clear that all the language of the Court contained in the above extract from the charge was a correct statement of the law appropriate to enlighten the jury as to the legal result to be expressed by their verdict according to the answers they might make to the questions of fact above stated which necessarily arose out of the evidence.

Error is assigned further in the refusal of the Circuit Judge to charge without modification the following request: "If they believe that the defendant was upon his own premises, the testimony showing that this was a private way, that he was not called upon to retreat." There being no evidence that the defendant ever claimed any exclusive property in the road or that it was not used by the deceased Knight and all other persons at their own will, the mere fact that the road ran through the lands of the defendant did not tend to prove that it was the private property of the defendant. The request therefore was an abstract proposition of law not relevant to the evidence adduced.

.The Circuit Judge having expressly charged the jury "the defendant is entitled to the benefit of any reasonable doubt you may have on any material fact in the case," the defendant cannot complain of the refusal to charge the request, "If the evidence tending to support the plea of self-defense should fall short, yet if it raises a reasonable doubt upon the whole question, that the jury should acquit him." Besides, we think the form in which the effort was made in the request to state the doctrine of reasonable doubt was calculated to confuse rather than to enlighten the jury.

It is the judgment of this Court that the judgment of the Circuit Court be affirmed.

Petition for rehearing refused and stay of remittitur revoked by formal order filed April 17, 1911.