14534

STATE v. McGEE

(193 S. E., 303)

*Messrs. C. T. McDonald* and *L. M. Gasque,* for appellant, cite:

*Messrs. G. Lloyd Ford, Solicitor* and *P. H. McEachin,* for the State, cite:

October 4, 1937.

The opinion of the Court was delivered by Mr. Justice Fishburne.

The defendant, Archie McGee, was tried for murder in the Court of General Sessions for Florence County, was convicted of manslaughter, and was sentenced to a term of ten years. His exceptions on appeal to this Court assign error to the trial Judge on his rulings with reference to the admission and the exclusion of evidence, and to certain omissions in his charge to the jury. Error is also assigned because of the refusal of a motion for a new trial.

It is first charged that the Court erred in not allowing the defendant's counsel, while cross examining the State's witness, J. D. Ellis, to question him as to what he swore at the inquest, for the purpose of showing variance between his testimony at the trial and his testimony at the inquest. Apparently, this exception has been taken under a misapprehension. The trial Judge made no ruling which prevented this line of examination. Defendant's counsel, after repeating to the witness certain testimony which had been given by him while testifying at the inquest, all of which he admitted giv-

ing, was interrupted by the Court, with the inquiry, "Are you undertaking to contradict him?" To which counsel replied, "That is part of the testimony, there is some I want." The trial Judge then remarked, "Let's get to what you want." The examination then continued, without any ruling on the part of the Court on the admissibility of the evidence adduced or sought, nor did the Court in any way otherwise limit the scope of the examination.

Error is alleged because the trial Judge refused to allow two of the State's witnesses, McCain and Bridges, upon cross examination, to testify as to previous difficulties between the defendant and the deceased. When this inquiry was commenced, objection was made by the solicitor to any testimony which would go into the details of such difficulties; it being contended that the defense could prove that there was bad blood between the deceased and the defendant, and that they had had antecedent physical encounters, but that testimony as to the details would not be competent. The record shows that the Court permitted these witnesses to state that former difficulties had taken place between the parties, but excluded testimony as to details. Not only at this stage of the trial, but at an earlier stage, the Court ruled that testimony was admissible as to previous difficulties, for the purpose of showing the animus which existed between the parties. This holding was in keeping with the well-recognized rule. *State v. Graham,* 161 S. C., 362, 159 S. E., 838.

Immediately after the Court's ruling that testimony relating to previous difficulties between the deceased and the defendant might be brought out, the witness Bridges testified, on cross examination:

"Q. Did you see the defendant on Thanksgiving night? A. Yes, sir.

"Q. Did you see him lying on the sidewalk? A. No, sir.

"Q. What happened to him? A. I seen him looked like his face had been beaten by blows and was bloody.

"Q. Did you see the blood puddle on the sidewalk? A. Yes, sir.

"Q. Did you see the dogs lap it up? A. No, sir.

"The Court: Don't go into that.

"Mr. McDonald: I understand it happened.

"The Court: Leave out all the things that happened that are not relevant. We are not trying the dogs."

It is argued that this testimony was relevant, showing the bad feeling between the defendant and the deceased, and that the remark of the Court, "We are not trying the dogs," was prejudicial, as tending to belittle and ridicule the defendant and his plea of self-defense. This testimony with reference to the dogs was in no sense relevant, and did not bear remotely upon the issue being tried. Its introduction could only have tended to shock the sensibilities of the jury, and prejudice their minds. It constituted extraneous matter, which the defense had no right to inject into the case, and which the Court properly ruled as irrelevant. Nor do we think that his incidental remark, "We are not trying the dogs," could be reasonably construed as belittling or ridiculing the defendant. There was no reference to the defendant or to his plea of self-defense in the Judge's remark, nor could his language be taken as an opinion on the facts or the merits of the case. *State v.Thrailkill*, 71 S. C., 136, 50 S. E., 551.

It is next urged that the Court erred in failing and refusing to require witnesses for the State to answer questions propounded, on cross examination, in violation of the appellant's constitutional rights, Article 1, § 18.

During the cross examination of the witness McCain by appellant's counsel, he answered many questions, but a few elicited no reply from him. But this failure to answer not only did not interrupt his examination, but at no stage of it was the Court requested to order the witness to answer. And the same thing is true with reference to the witness William Copeland. An examination of the testimony shows that the questions to which these witnesses made no answer had already been answered. The record does not show that counsel

insisted upon an answer, and, as already stated, the Court was at no time during the progress of the trial requested to order these witnesses to answer any questions. We see no merit in this exception.

■ By several exceptions, the appellant assigns error to the Judge's charge to the jury. In the appellant's brief, these exceptions are restated, but are unsupported by argument or by citation of authority.

It is urged that the trial Judge erred in his instructions to the jury on the law of self-defense. This portion of the charge is as follows: "Self defense is a plea that any person charged with murder may plead. It is a right that has come to us from time immemorial to defend yourself against serious bodily harm or death. A person who pleads self-defense must show four things: That he was without fault in bringing on the difficulty. A man who is at fault in bringing on a difficulty has no right to plead self-defense. No matter if after being at fault in bringing on the difficulty it is necessary for him to strike or shoot to save his life he cannot plead that—it is no excuse, because he was at fault in bringing on the difficulty and the law says he cannot avail himself of that defense. Second, at the time he struck the fatal blow or fired the fatal shot he must believe that he was in danger of receiving serious bodily harm or death at the hands of his assailant. Third, not only must he believe that, but the circumstances must be such that a man of ordinary judgment and prudence would think so. And the fourth is that there was no reasonable means of avoiding it. If a man may avoid taking the life of another, he must do it. If he can reasonably avoid it, he must do it. In fact the law requires him to retreat, if by retreating he could avoid taking human life. A person need not retreat if to do so would apparently increase his danger. Take all of the circumstances and if to undertake to retreat or to refrain from striking or shooting would apparently increase his danger, then he may stand his ground and strike in self-defense."

The first specification of error is that the Court erred in charging the jury as follows: "Not only must he believe that, but the circumstances must be such that a man of ordinary judgment and prudence would think so," the error being, failure to qualify the instruction by adding the words, "if situated under like circumstances." We think there was no misstatement of the law.

The jury were plainly told that the situation was to be judged at the time of the fatal shot by the standards of the belief of a man of ordinary judgment and prudence under the circumstances existing at that time.

It is next contended that the trial Judge failed to charge that a defendant, in taking the life of another, has the right to rely on appearances in determining whether or not he is in immediate danger of bodily harm.

The charge itself is a complete answer to this criticism. After stating that the defendant must believe that he was in danger of receiving serious bodily harm or death, this statement of the law was given: "Not only must he believe that, but the circumstances must be such that a man of ordinary judgment and prudence would think so." And the charge concluded: "Take all of the circumstances, and if to undertake to retreat or to refrain from striking or shooting would apparently increase his danger, then he might stand his ground and strike in self-defense." This instruction gave to the defendant the right to rely on appearances as to whether or not he was in immediate danger of bodily harm. Similar instructions were sustained in *State v. Scruggs,* 94 S. C., 304, 77 S. E., 944; *State v. Boyd,* 155 S. C., 432, 152 S. E., 677. Furthermore, this exception cannot be sustained, because no request was made that such instruction be given. We shall elaborate on this point later in this opinion.

The position is next taken that the Court erred in charging the requirement to retreat, if by retreating the taking of human life could be avoided, but that one need not retreat if to do so would apparently increase his danger. It is contended that the defendant, being on a

public street, in his automobile, where he had a right to be, did not have to retreat, and that this alleged error fatally discounted the defendant's plea of self-defense.

Under the law of self-defense, it was the duty of the defendant to retreat, unless, by so doing, it apparently increased his danger. The fact that the defendant was on a public highway, where all men have equal rights, and in his automobile, did not constitute any one of those special privileges obviating the necessity of retreating before killing. *State v. Babb,* 88 S. C., 395, 70 S. E., 309. The question of "castle," does not enter here. *State v. Rish,* 104 S. C., 250, 88 S. E., 531; *State v. Shuler,* 116 S. C., 152, 107 S. E., 147; *State v. Boyd,* 126 S. C., 300, 119 S. E., 839. The homicide occurred on a public street, in the City of Florence, and it cannot be questioned that both the defendant and the deceased had a legal right to be where they were. If this exception of the appellant were sustained it would throw around a private conveyance, on a public street, the same protection as is given to the "castle." The contention is untenable.

It is next urged that the trial Judge erred in failing and neglecting to charge the jury that the appellant's plea of self defense must be proved only by a preponderance of the evidence. The issue is made that the jury where left free, under the whole charge, to infer that this affirmative plea had to be established beyond a reasonable doubt. By reference to the quoted portion of the charge; it will be observed that the trial Judge used this language, "A person who pleads self-defense must show four things, * * * " but nowhere in the charge is it stated what degree of proof is necessary to make out the several elements of self-defense. The Judge's charge in the instant case did not particularize the degree of proof required of the defendant to establish self-defense. The emphasis is wholly upon the State's burden to prove beyond a reasonable doubt the guilt of the defendant. Nowhere is it suggested that the defendant must prove his plea of self-defense beyond a reason-

able doubt. The Judge charged: "If you have such doubt as to whether or not your verdict shall be guilty, or guilty with recommendation to mercy, give the defendant the benefit of that and find him guilty with recommendation to mercy. If you have a reasonable doubt whether he is guilty of murder or manslaughter, give him the benefit of the doubt and find him guilty of manslaughter. If you have a reasonable doubt as to whether guilty of any offense, give him the benefit of that doubt and find him not guilty."

It is a rule of general application that, if instructions given are correct as far as they go, it cannot be assigned as error that the Court omitted to instruct on all points involved in the case if the attention of the Court has not been directed thereto by special request for instructions on those points, unless the omission is as to a matter which is basic or fundamental.

No special requests were submitted by the appellant, and, at the conclusion of the charge, his Honor asked if there was anything further, to which the appellant's counsel replied, "I guess that is all."

One of the leading cases on the subject is that of *State v. Adams,* 68 S. C., 421, 47 S. E., 676, 678, where the Court said:

"The rule is thus stated in *State v. Meyers,* 40 S. C. [555], 556, 18 S. E., 892: 'As will be observed, in the first ground of appeal the appellant alleges that the Circuit Judge erred in failing to make a charge that appellant now thinks would have inured to his benefit. By numerous decisions of this Court it has been held to be the law in this State, that no such allegation of error will be considered in this Court unless a request for such charge has been made to the Circuit Judge on the trial before him.' See 11 Ency. P. & P., 217, and the numerous authorities there cited. The author says: 'The failure of a judge to charge upon any material point usually results from inadvertence, and the law casts upon the parties the duty of calling the judge's attention to the matter. If he then refuses to give a proper requested instruc-

tion, such refusal is a ground of error; but a party cannot, in a court of error, avail himself of an omission which he made no effort to have supplied at the time. The court cannot be presumed to do more in ordinary cases than express its opinion upon the questions which the parties themselves have raised on the trial. It is not bound to submit to the jury any particular proposition of law unless its attention is called to it. If counsel desire to bring any view of the law of the case before the jury, they must make such view the subject of a request to charge, and, failing in this, they cannot assign error.'

"Any other doctrine would, we think, produce overwhelming embarrassment, and delay in the practical administration of justice. Under the Constitution of 1895 the rule has been applied in *State v. Smith,* 57 S. C., 489, 35 S. E., 727; *State v. Chiles,* 58 S. C., 47, 36 S. E., 496; *Youngblood v. R. R. Co.,* 60 S. C., 9, 38 S. E., 232 [85 Am. St. Rep., 824]; *Sudduth v. Sumeral,* 61 S. C., 276, 39 S. E., 534, 85 Am. St. Rep., 883; and other cases. The doctrine is based on acquiescence and waiver. It is true, the Constitution of 1895 requires the judges in charging juries 'to declare the law.' But the right to have all the law declared may be waived like any other right, and an omission acquiesced in. The failure to request instructions on any particular point is regarded waiver of the right to such instruction and acquiscence in the omission."

The principle announced in the *Adams case* has frequently been reaffirmed. See *State v. Rouse,* 138 S. C., 98, 135 S. E., 641; *White et al. v. Charleston and Western Carolina Ry. Co.,* 132 S. C., 448, 129 S. E., 457; *Watson v. Sprott,* 134 S. C., 367, 133 S. E., 27.

Thus it was held in the case of *State v. Johnson* (S. C.), 156 S. E., 351, 352, where error was imputed to the trial Judge in failing to charge the jury that the defendant is presumed to be innocent until his guilt is established beyond a reasonable doubt, that: "It would have been the proper

thing in this case for the trial Judge to have given such instruction; but, in view of the fact that he instructed the jury fully as to reasonable doubt, and that there was no request for a specific charge as to presumption of innocence, we do not think, under the authorities cited, that his failure to charge as to such presumption was reversible error."

In *State v. Adams, supra,* it was held that, "failure to charge the jury that they could convict of murder and recommend to mercy, and that such recommendation would result in a sentence of life imprisonment instead of a sentence of death," was held not to be reversible error, when there was no request for such a charge (citing *State v. Owens,* 44 S. C., 324, 22 S. E., 244).

In the instant case, there was not only no specific request to charge, but by the statement of appellant's counsel, in effect, that the instructions given covered all the issues and the law, the trial Judge was naturally led to believe that the entire applicable law had been given. On the authority of the foregoing cases, this exception must be overruled.

Upon principles already discussed, we find no error in the refusal of the trial Judge to grant a new trial.

All exceptions are overruled.

Judgment affirmed.

MR. CHIEF JUSTICE STABLER and MR. JUSTICE BONHAM concur.

MR. JUSTICE BAKER disqualified.

MR. JUSTICE CARTER did not participate on account of illness.