19725

The STATE, Respondent, v. Larry Ronald MITCHELL, Appellant

(200 S. E. (2d) 448)

*Messrs. Thomas F. Allgood,* and *George B. Snelling, Jr.,* of *Allgood & Childs,* Langley, *for Appellant,* cite:

*Messrs. Daniel R. McLeod, Atty. Gen.,* and *Emmet H. Clair, Robert M. Ariail, Asst. Attys. Gen.,* of Columbia, and *C. LaVaun Fox, Sol.,* of Aiken, *for Respondent,* cite:

454

Nov. 9, 1973.

LEWIS, Justice:

A jury rejected appellant's plea of insanity and convicted him of the murder of his wife, resulting in the imposition of a life sentence. He contends in this appeal that a directed verdict of not guilty should have been granted because the evidence conclusively established his plea of insanity; and, alternatively, that a new trial should be granted because of (1) alleged prejudicial statements and questions by the trial judge and (2) erroneous instructions to the jury as to the burden of proof on the issue of insanity.

The contention that appellant was entitled, as a matter of law, to an acquittal because his plea of insanity had been conclusively established was made for the first time as a ground for a motion for a judgment of acquittal notwithstanding the verdict. Since the question was

not raised during trial by motion for a directed verdict, as required by Rule 76 of the Circuit Court, it is not available as a ground of appeal. However, assuming that the question was properly raised, there was ample evidence to require the submission of the issue of insanity to the jury for determination, as the following examination of the record demonstrates.

After a night of drinking and visiting beer joints with two companions, appellant, on October 8, 1971, shortly before 8 a. m., shot and killed his estranged wife with a 30-30 rifle as she was walking from a parking area to enter her place of employment; and also shot his wife's stepmother who had carried the wife to work. One of his companions of the night was driving the car from which appellant stepped to commit the crime. Shortly thereafter appellant told an acquaintance that he had shot two people and requested that he call the police. The officers came immediately, arrested him, and placed him in jail.

About 3:45 on the afternoon of his arrest, approximately eight hours after commission of the crime, appellant was carried before the clerk of court to determine the need to appoint counsel to represent him. While there he was asked concerning his employment, income, ownership of property, indebtedness, family status, and his birth date and age. He answered all questions asked, signed his name, stated that he was unable to employ an attorney, and asked that one be appointed for him.

Appellant remained in the Aiken County jail until November 15, 1971, when he was admitted to the State Hospital, under a court order, for psychiatric evaluation and treatment, as prescribed by Section 32-969 of the 1962 Code of Laws. While in the Aiken County jail, he was visited by relatives, and was visited by doctors routinely in connection with a kidney transplant operation which had been performed upon him in August 1968 by doctors in Augusta, Georgia. At the time of the crime, appellant was still taking

medication required by the kidney transplant, consisting of predizone (a synthetic type of cortizone) and immuran.

After his admission to the State Hospital, the doctors concluded that appellant was insane and retained him at that institution until October 10, 1972 when he was released as being sane and able to assist in his defense.

A psychiatrist from the State Hospital staff testified that appellant was insane when admitted to that institution on November 15, 1971 and had been insane for sometime prior thereto. In summarizing his oppinion as to the mental condition of appellant when he first saw him, the psychiatrist stated:

"He has the feeling that people are talking about him; he's quite delusional, has delusions of persecution, that people are plotting against him, and he appears to have had acute schizophrenic mental illness as a result of the toxic state produced by the drugs, predizone and immuran, which he's taking in connection with his kidney transplant."

It was the opinion of the psychiatrist that appellant was suffering from mental illness at the time of the crime and did not know right from wrong.

It is inferable that appellant had consumed a considerable amount of alcoholic beverages prior to the crime. With reference to the dangers from consuming alcoholic beverages while taking the drugs, predizone and immuran, the psychiatrist stated that any person who consumed beer and whiskey, while taking those drugs, is "in trouble." Appellant testified that the doctor who performed the kidney transplant cautioned him against drinking whiskey. Since his release from the State Hospital, as sane, on November 15, 1972, appellant has continued to take the same drugs but, apparently, with no resulting insanity.

Appellant contends that the testimony of the psychiatrist, as to the mental condition of the appellant at the time of the commisison of the crime, was con-

clusive on the issue of insanity. The fact that the opinion of the psychiatrist was not countered by expert evidence to the contrary did not entitle appellant to a directed verdict. The record contains a detailed account of appellant's actions, conduct, and appearance prior and subsequent to the shooting, from which a reasonable inference could be drawn that he was sane when he killed his wife. The weight to be accorded the opinion of the psychiatrist was for the jury to determine in the light of all of the attendant facts and circumstances in evidence.

The remaining questions concern charges that the trial judge made statements to counsel and conducted an examination of some of the witnesses to the prejudice of appellant. It is contended that such actions of the trial judge injected irrelevant and prejudicial matters into the case. The first of these concerns questions asked on the issue of insanity.

The psychiatrist testified that the mental condition of appellant was triggered by the taking of drugs prescribed and necessary to keep appellant's body from rejecting the kidney transplant. He also testified that appellant was sane at the time of trial, having recovered during his stay in the State Hospital; and that he would have to continue to take the prescribed drugs. With reference to the continued use of these drugs, the trial judge questioned the psychiatrist as follows:

"Q. But did I understand you to say that part of the situation you found him in . . . was attributable to the medicine he was taking to prevent his body from rejecting the transplant?

"A. That's right.

"Q. And he's still taking those?

"A. If he doesn't take them, he'll die.

"Q. And if he continues taking them, then he'll get back into the situation he was in when you first saw him?

"A. He might. That's possible, yes, sir. I wouldn't say he will, but he might . . .

"Q. But it's nothing which he has any control over, is it?
"A. No, sir."

Appellant contends that the testimony relative to his possible future mental condition was irrelevant and, under the circumstances, highly prejudicial. The testimony was neither irrelevant nor prejudicial. It related to the effect of the drugs upon apppellant's mental condition. The probability of the recurrence of insanity from the continued use of the drugs was relevant in determining whether their use had affected appellant's mind at the time he shot his wife; and the objection to the testimony was properly overruled.

The trial judge also elicited testimony from the stepmother of the deceased that appellant had shot her in the back immediately after shooting the deceased. It is contended that such testimony was irrelevant and prejudicial. Appellant shot his wife, immediately reloaded the gun, and shot the stepmother. The two offenses were so closely connected as to constitute a continuous transaction and the admission in evidence of testimony concerning the subsequent shooting of the stepmother was not error. *State v. Graham,* 161 S. C. 362, 159 S. E. 838; *State v. Brooks,* 235 S. C. 344, 111 S. E. (2d) 686.

The next alleged prejudicial interference by the court in the trial occurred during the testimony of a witness, Mrs. Goss. Mrs. Goss testified that she called appellant prior to the shooting and informed him that his wife (the deceased) had been having an affair with her husband. On cross examination by the Solicitor, the witness testified for the first time that she also had a conversation with the deceased about the relationship with the witness' husband. The Solicitor then asked her if she had ever discussed the latter conversation with appellant, to which she replied that she had not. The solicitor stated in reply:

"That's strange. Thank you, M'am." Counsel for appellant objected to the foregoing remark by the Solicitor and asked that the jury be instructed to disregard it. Immediately thereafter the following colloquy occurred between the court and counsel for appellant:

"Court: I think it would probably be interesting for the jury to know or to find out how you found out she'd had the conversation with him, if she didn't have a conversation with the defendant.

"Counsel: She had a conversation with him. She said she had a conversation with him.

"Court: Since the shooting took place. She said she only had the one. So if you want to follow up . . . and explain how you knew she'd had a conversation with the wife, who is now deceased.

"Counsel: She just testified to it.

"Court: You had to know the answer to that question before you asked it.

"Counsel: No, sir.

"Court: I say you knew the answer before you asked her—

"Counsel: I've never talked to the lady. I never saw her before in my life.

"Court: Well, why did you ask the court to let you go into something then?

"Counsel: Because the Solicitor asked her on cross examination about that."

. . .

The foregoing colloquy was finally concluded by an examination of the witness by the court, resulting in a denial by her that she had ever talked to counsel for appellant before that day.

It is contended that the instance by the court that counsel knew of the conversation between the witness and the deceased, prior to the inquiry by the Solicitor, amounted to

an accusation that counsel was deliberately misrepresenting the facts to the court.

The foregoing statements of the court were directed to counsel's alleged conduct and did not constitute a reflection on the credibility of the witness. While the record reveals no reason for the issue to have been raised by the court, we fail to find wherein the appellant has been prejudiced by the statements to counsel and the exception charging error in this regard is accordingly overruled.

Objection is also made to a ruling by the trial judge during efforts by appellant's counsel to propound a hypothetical question to the psychiatrist. After an objection had been sustained to a proposed hypothetical question and appellant's counsel had continued to argue the matter, the court stated to counsel: "You'll do it according to the way I've instructed you to do it. It makes no difference what you think. You'll do as I tell you to do, or you don't ask him the question."

Counsel invited the foregoing definite and explicit ruling by his refusal to adhere to previous suggestions and rulings by the court and is in no position to complain. No prejudice resulted from the instructions given to counsel.

Appellant argues further that not only were each of the foregoing comments and acts of the trial judge prejudicial, when considered separately, but, when viewed together, their cumulative effect was to show an antagonistic attitude on the part of the trial judge, rendering it impossible for appellant to receive a fair trial. We have examined each of the cited instances with care and have reached the conclusion that, while some of the statements and questions by the trial judge were unnecessary and should have been omitted, they did not, under this record, result in legal prejudice to appellant.

Finally, it is argued that the trial judge erred in the instructions to the jury relative to the burden of proof on the issue of insanity. This objection was not

raised during the trial in the lower court nor by any exception in this appeal. It was first mentioned in the written brief of appellant. Since the objection was not raised in the lower court, it is not available to appellant on appeal.

Judgment affirmed.

Moss, C. J., and LITTLEJOHN, J., concur.

BRAILSFORD and BUSSEY, JJ., dissent.

BRAILSFORD, Justice (dissenting) :

. I am convinced that the able trial judge, in the presence of the jury, inadvertently exceeded the bounds of propriety in his remarks to counsel during the examination of this witness Goss, and in his examination of this witness immediately afterward. This incident is adequately described in the majority opinion and need not be repeated.

In the colloquy between the court and counsel the judge, apparently, without provocation disclosed by the record, lost his temper, and, by the clearest inference if not directly, accused counsel of misrepresenting facts to the court. The judge's examination of the witness immediately afterward concerning the same facts tended to emphasize his distrust of the representations which had just been made to him in the most unequivocal terms by counsel.

The remarks of the court tended to impugn the credibility of counsel and to diminish him and his defense of appellant in the eyes of the jury. Counsel's ability to furnish effective representation was to that extent impaired, perhaps to appellant's serious prejudice. I would reverse the judgment appealed from and grant the appellant a new trial.

BUSSEY, J., concurs.