23680

The STATE, Respondent v. Larry Wayne MASTERS, Petitioner.

(418 S.E. (2d) 552)

Supreme Court

*Geddes D. Anderson*, Greenwood, *for petitioner.*

*T. Travis Medlock, Atty Gen., Harold M. Coombs, Jr., Asst. Atty. Gen.*, and *W. Townes Jones, IV, Sol.*, Eighth Judicial Circuit, *for respondent.*

Heard March 9, 1992.

Decided June 22, 1992.

Reh. Den. July 16, 1992.

TOAL, Justice:

Petitioner ("Masters") was convicted of driving under influence ("DUI"). The Court of Appeals upheld that conviction in *State v. Larry Wayne Masters*, Op. No. 90-UP-133 (Ct. App. filed August 14, 1991) (unpublished). We granted certiorari to review the decision of the Court of Appeals. We reverse.

## FACTS

On April 11, 1990, Masters was arrested for DUI in the City of Greenwood. The arresting office transported Masters to the Greenwood Law Enforcement Center for a breathalyzer test. Masters was videotaped, but when the operator attempted to calibrate the breathalyzer machine, the machine malfunctioned. The officer then transported Masters to the Town of Ninety Six for a second attempt at a breathalyzer test. That machine also malfunctioned. Masters was then transported back to the Greenwood Law Enforcement Center ("Center"). At the Center, Masters requested a blood test. The office agreed to transport Masters to the hospital for the blood test. En route to the hospital, the officer received a call on the police radio and he was directed to return Masters to the Center. The record does not reveal the reason the officer was ordered to return Masters to the Center.

At trial, Masters moved to dismiss the charges because the officer failed to completes the trip to the hospital for Masters to obtain a blood test. Masters was convicted of DUI and the Court of Appeals affirmed.

## LAW/ ANALYSIS

On appeal, Masters claims that his motion to dismiss should have been granted by the trial court because the arresting officer failed to follow through on obtaining a blood test. Under these unique facts, we agree.

In *State v. Lewis*, 266 S.C. 45, 48 221 S.E. (2d) 524, 526 (1976), this Court recognized the defendant's implied right under S.C. Code Ann. § 56-5-2950 (1976) (formerly § 46-344) of a reasonable opportunity to obtain a blood test. "What is reasonable will, of course, depend on the circumstance of each case." *Lewis* at 48, 221 S.E. (2d) 526.

We specifically held in *Lewis* that the officer does not have an affirmative duty to assist the defendant when the defendant refuses to take the breathalyzer. The officer's duty is only to provide the defendant with a "reasonable opportunity to obtain a blood test." *See Id.* This "reasonable opportunity" does not include the affirmative duty to procure a blood test for a defendant who has not first been given a breathalyzer. *See Id.; see also,* Debra T. Landis, Annotation, *Driving While Intoxicated: Duty of Law Enforcement Officer to Offer Suspect Chemical Sobriety Test Under Implied Consent Law,* 95 A.L.R. (3rd) 710 (1979) (affirmative duty of law enforcement officers rejected by courts considering issue). However, under unique facts such as these, where the officer transports the defendant to two different locations in aborted efforts to administer the breathalyzer test and where the officer affirmatively undertakes to procure a blood test for the defendant, then the officer terminates that affirmative undertaking without any explanation or excuse, the officer has effectively denied the defendant the reasonable opportunity to obtain a blood test. Thus, the trial court should have dismissed the charges against the defendant.

We reverse.

HARWELL, C.J., and CHANDLER, and FINNEY, JJ., concur.

MOORE, J., dissenting in separate opinion.

MOORE, Justice (dissenting):

I respectfully dissent. I would affirm the decision of the Court of Appeals. The facts of this case do not call for a departure from well-settled law that a police officer is not required

to affirmatively assist a defendant in obtaining a blood test when that defendant has not first been given a breathalyzer test.

The arresting officer testified that he followed Masters' vehicle and observed Masters swerve off the road twice and cross over the center line into the lane of oncoming traffic. After stopping Masters, the officer observed that Masters was unsteady on his feet and "glassy-eyed," smelled strongly of alcohol, and spoke in a very slurred and disjointed manner. When asked for his license and registration, Masters repeatedly asked the officer to "give him a break" and let him go home.

After his arrest for DUI third offense, Masters was taken to the Greenwood County Law Enforcement Center, where he was videotaped. The breathalyzer operator then began to administer a breathalyzer test following the procedure outlined on a "Breathalyzer Test Form." He first advised Masters of his rights, including the right not to take breathalyzer. The police testified that Masters refused the test at the point.

Despite Masters' refusal, the breathalyzer operator continued, as required by police procedure, to follow the checklist on the Form. The officer calibrated the breathalyzer machine and found the machine inoperable, whereupon Masters stated he wanted to take the test "for funsies" to "just find out between us what it would be."

The malfunctioning machine was the only one available in Greenwood, so Masters was transported to the nearby town of Ninety Six for a breathalyzer test. After being again advised of his rights, Masters again refused the test. The officer proceeded to calibrate the machine at Ninety Six but it too was inoperable. Masters then said he would take the test.

No other machine was available in Ninety Six and Masters was transported back to the Greenwood Law Enforcement Center. Upon arrival, approximately two hours after his arrest, Masters requested that the arresting officer take him to the hospital for a blood test. On the way to the hospital, the officer received a radio call, the contents of which are not disclosed in the record, and returned with Masters to the Law Enforcement Center. Masters made no further attempt to arrange a blood test and there is no evidence the officers did

anything to prevent him from doing so. Consequently, there was no chemical test of the defendant's breath or blood.

South Carolina Code Ann. § 56-5-2950 (1991) provides in pertinent part, "[t]he person *tested or giving samples for testing* may have a qualified person of his own choosing conduct *additional* tests at his expense and must be notified of that right. . . . The arresting officer shall provide *reasonable assistance* to the person to *contact* a qualified person to conduct additional tests." (Emphasis supplied.)

In *State v. Lewis*, 266 S.C. 45, 221 S.E. (2d) 524 (1976), this Court drew a distinction between those persons who have taken the breathalyzer test and therefore are entitled to the mandatory assistance of § 56-5-2950, and those who have not been tested and are entitle, pursuant to their due process rights, to a reasonable opportunity to obtain an independent test. The language of our statute and the *Lewis* holding are clear. Only those persons who have actually undergone testing by the police are entitled to police assistance with regard to contacting someone for independent testing. "The purpose of § [56-5-2950] is to permit an accused to gather independent evidence to submit in *reply* to that of the prosecuting authority." *Town of Fairfax v. Smith*, 285 S.C. 458, 460, 330 S.E. (2d) 290 (1985) (emphasis supplied). *See also Gibson v. Troy*, 481 So. (2d) 463 (Ala. Crim. App. 1985); *Commonwealth v. Alano*, 388 Mass. 871, 448 N.E. (2d) 1122 (1983); *McKinnon v. State*, 709 S.W. (2d) 805 (Tex. Crim. App. 1986); *State v. Johnson*, 143 Vt. 355, 465 A. (2d) 1366 (1983).

Further, in *Lewis* the Court did not address what constitutes reasonable assistance to contact a qualified person to conduct additional testing. In my opinion, "reasonable assistance to contact" is allowing the suspect to make a phone call or assisting him in doing so. North Carolina is the only other state which statutorily provides for "reasonable assistance to contact." I agree with the North Carolina Court of Appeals, which has held that transportation of the suspect to the hospital is not required under their statute. *State v. Bunton*, 27 N.C. App. 704, 220 S.E. (2d) 354 (1975).

There is no requirement or obligation—either statutorily or constitutionally—for police officers to transport a suspect for the purpose of obtaining a blood test when he has not taken a breath test. *Lewis*, 221 S.E. (2d) 524; *Alano*, 448 N.E. (2d)

1122; *State v. Choate*, 667 S.W. (2d) 111 (Tenn. Crim. App. 1983) (citing *State v. Lewis*). Because the effort on the part of the police to take Masters for a blood test was completely gratuitous, Masters was not entitled to dismissal of the charges against him when the effort was aborted.

The majority concludes that Masters was effectively denied a "reasonable opportunity" that impliedly arises from the statute. The *Lewis* Court made it clear, however, that the right to reasonable assistance is statutory, and the right to a reasonable opportunity comes from the constitutional due process guarantee of the fourteenth amendment. Masters' due process claim was not raised to the trial judge nor encompassed by his exceptions, and in my opinion, the Court of Appeals properly declined to address the due process issue. *State v. Newton*, 274 S.C. 287, S.E. (2d) 906 (1980); *State v. Mitchell*, 261 S.C. 452, 200 S.E. (2d) 448 (1973).

Even if the issue of reasonable opportunity were properly before the Court, the fact that the police officers terminated Masters' trip to the hospital is irrelevant. The *Lewis* Court determined that access to a telephone constitutes a reasonable opportunity to obtain a blood test. *See also State v. Degnan*, — S.C. —, 409 S.E. (2d) 346 (1991). Masters makes no claim that he was denied access to a telephone and no such evidence was presented. Accordingly, I disagree with the holding of the majority that Masters did not have reasonable opportunity to obtain a blood test.

I agree with the majority that what is reasonable depends on the circumstances of each case, and that the facts of this case are unique. I would affirm the conviction and the decision of the Court of Appeals.