512 S.E.2d 117

**STATE of South Carolina, Respondent,**

v.

**Benny E. KNIGHTON, Appellant.**

No. 2923.

Court of Appeals of South Carolina.

Heard Nov. 5, 1998.

Decided Jan. 4, 1999.

Rehearing Denied March 27, 1999.

Mark C. Brandenburg, of Joseph S. Brockington, PA, of Charleston, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott and Senior Assistant Attorney General Harold M. Coombs, Jr., all of Columbia; and Solicitor Walter M. Bailey, Jr., of Summerville, for respondent.

HUFF, Judge:

Appellant, Benny E. Knighton, was convicted of driving under the influence, second offense. He appeals. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

In the early morning hours of April 7, 1996, while returning to his home in Charleston after a trip to Greenwood, appellant was stopped on I–26 by Trooper Nicholas King. A private citizen traveling on I–26 witnessed Knighton backing up in the emergency lane on the interstate near Columbia, after Knighton missed the Charleston exit. After observing Knighton speeding, weaving, and nearly hitting a concrete median, the citizen called the highway patrol to report an erratic driver. Trooper King responded to the call and stopped Knighton after he observed him weaving between lanes and his tire crossing over the shoulder of the road. As the trooper approached Knighton's car, he immediately smelled the odor of beer. The trooper asked him if he had anything to drink and Knighton responded he had drunk four beers and a small bottle of whiskey.[1] After failing several field sobriety tests, the trooper placed Knighton under arrest for driving under the influence.

---

[1] At trial, Knighton testified he told Trooper King he had consumed two beers and a mini-bottle of V–O prior to leaving Greenwood.

Trooper King transported Knighton to the Orangeburg County Law Complex where Knighton was offered a breathalyzer test. Before the test was performed, Knighton asked to speak with his attorney, and was assisted in reaching his attorney on the phone. Thereafter, Trooper Billy Jackson administered the breathalyzer test, which indicated Knighton had a blood alcohol content of .13 percent.

After the breathalyzer test was completed, Knighton stated he wanted a blood test. Officer Jackson placed a phone call to the Orangeburg County Hospital. Upon speaking with the appropriate people at the hospital, Officer Jackson was informed the hospital required a family doctor to order the blood test and that the test would cost $52.00. Mr. Knighton then spoke with the hospital personnel, who informed him of the requirement of a family doctor order and the $52.00 cost. Knighton told the officers the cost of the test. Trooper King, having patted Knighton down at the arrest, knew Knighton had some loose bills in his pocket and told him to check his front pocket for money. Knighton pulled out the money and counted $6.52.[2] Knighton also informed the officers he did not have a family doctor.

Prior to trial, Knighton made a motion to suppress the breathalyzer test results, arguing he was denied affirmative assistance in obtaining a blood test. The court held an in camera hearing on the matter. Knighton testified that, because he didn't have the money or a family doctor to order the test, the troopers told him they were not going to take him to get a blood test. He claimed he "kept requesting" a blood test and he informed the troopers he knew a doctor he could call and that he could get the money from his boss, who lived in Orangeburg, but the troopers refused to let him make the calls. Trooper King, on the other hand, testified that Knighton was not denied access to the phone, that he was allowed to call his attorney and the hospital, and that he could have made any phone calls that he wanted to make. Both Troopers King and Jackson testified, after Knighton found out he needed $52.00 and a family doctor's order for the test, he simply

---

**2.** Apparently, Knighton had a $100 dollar bill in a "private place" in his wallet that was on his person at that time, of which he was unaware. The officers did not check Knighton's wallet for money.

dropped the subject. They further testified they would have taken him to the hospital for the test if he still wanted to go.[3]

The trial judge found Knighton was not denied the right to have an independent blood test taken. He found the law enforcement officers were available and did offer to aid Knighton in his attempt to obtain an independent test, and the fact that Knighton lacked sufficient funds or a doctor's authorization were "not matters that the officers would have been required to fulfill." Accordingly, he denied the motion to suppress.

## ISSUES

Knighton raises the following issues on appeal:

(1) Did the trial court err in ruling the officers provided Knighton sufficient assistance in obtaining an independent blood test?

(2) Did the trial court err in refusing to grant a mistrial where the solicitor attempted to elicit evidence of Knighton's prior conviction for driving under the influence?

(3) Did the trial court err in failing to grant a mistrial where the solicitor introduced statements made by Knighton during his arrest, which the solicitor failed to reveal pursuant to Knighton's Rule 5, SCRCrimP, motion?

(4) Did the trial court err in failing to charge the jury on the terms "reasonable assistance" and "reasonable opportunity" as requested by Knighton?

## LAW/ANALYSIS

I.  Suppression of Breathalyzer Test

■  Knighton first asserts the trial court erred in failing to suppress the breathalyzer test because the officers failed to provide him with the "reasonable assistance" in obtaining an independent test that he was entitled to under the law. He argues, as a person who submitted to the breathalyzer test, he was entitled to "affirmative assistance" pursuant to *State v. Harris*, 311 S.C. 162, 427 S.E.2d 909 (Ct.App.1993). He

---

**3.** At trial, Knighton denied dropping the subject of the blood test, and claimed he requested one "all the way to a cell."

further contends the troopers' conduct at best amounted to the lesser standard of "reasonable opportunity," which is required for a suspect who refuses the breathalyzer test. We disagree.

The issue of whether affirmative assistance was required of law enforcement personnel in obtaining independent testing for DUI suspects first arose in *State v. Lewis,* 266 S.C. 45, 221 S.E.2d 524 (1976). Lewis argued to the Supreme Court that his case should be dismissed because law enforcement refused to affirmatively assist him in obtaining an independent blood test after he refused to submit to a breathalyzer test. The relevant statute in effect at the time provided that the arresting officer or the person conducting the chemical test was required to "promptly assist [t]hat person to contact a qualified person to conduct additional tests." *Lewis,* 266 S.C. at 48 n. 1, 221 S.E.2d at 526 n. 1. In reading the statute in its entirety, the court found the phrase "that person" referred to a person who had taken the breathalyzer test. The court stated, "The clear language of the statute requires assistance to be given only to a person who has taken the breathalyzer test." *Id.* at 48, 221 S.E.2d at 526. Nonetheless, the court found the statute did not deprive a person arrested for DUI who refused the breathalyzer test of a "reasonable opportunity" to obtain an independent test, although the statute "[did] not expressly give a person this right." *Id.* at 48, 221 S.E.2d at 526.

S.C.Code Ann. § 56–5–2950(a) (Supp.1997) provides in pertinent part as follows:

A person who operates a motor vehicle in this State is considered to have given consent to chemical tests of his breath, blood, or urine for the purpose of determining the presence of alcohol or drugs if arrested for an offense arising out of acts alleged to have been committed while the person was operating a motor vehicle while under the influence of alcohol, drugs, or a combination of them. A test must be administered at the direction of a law enforcement officer who has apprehended a person for operating a motor vehicle in this State while under the influence of alcohol, drugs, or a combination of them. At the direction of the arresting officer the person first must be offered a

breath test to determine the alcohol concentration of his blood. . . .

\*     \*     \*

The person tested or giving samples for testing may have a qualified person of his own choosing conduct additional tests at his expense and must be notified of that right. . . .

\*     \*     \*

The arresting officer shall provide reasonable assistance to the person to contact a qualified person to conduct additional tests.

Although the statute has been amended and the language has changed somewhat since the *Lewis* opinion was issued, this court has found *Lewis* still applies to require that a person who takes a breathalyzer test pursuant to § 56–5–2950 is entitled to affirmative assistance from the police in obtaining a blood test. *State v. Harris*, 311 S.C. 162, 427 S.E.2d 909 (Ct.App.1993). *State v. Masters*, 308 S.C. 433, 418 S.E.2d 552 (1992) (officer does not have affirmative duty to assist defendant when defendant refuses to take breathalyzer); *See also State v. Degnan*, 305 S.C. 369, 409 S.E.2d 346 (1991) (Implied Consent Statute requires law enforcement officers to lend assistance in obtaining additional blood test only to person who took breathalyzer test; one who refuses the breathalyzer test is entitled only to a reasonable opportunity to obtain the test, and is not entitled to affirmative assistance).

■    Clearly, because Knighton submitted to a breathalyzer test, he was entitled to affirmative assistance from the officers in obtaining an independent blood test. Whether one receives affirmative assistance which is reasonable under the statute depends on the circumstances of each case.

While several cases subsequent to *Lewis* discuss whether one who did not take a breathalyzer test received a reasonable opportunity to obtain an independent test,[4] research reveals few cases addressing the issue of whether a subject who

---

4. *See City of Columbia v. Ervin*, 330 S.C. 516, 500 S.E.2d 483 (1998) (all dealing with the issue of reasonable opportunity because no breathalyzer tests were administered); *State v. Smith*, 326 S.C. 39, 482 S.E.2d 777 (1997); *State v. Sullivan*, 310 S.C. 311, 426 S.E.2d 766 (1993); *State v. Masters, supra;* and *State v. Degnan, supra.*

provided a, breath sample was provided reasonable assistance in obtaining an independent blood sample. In each of four cases found with such scenarios, the defendants did, in fact, have blood drawn. The question in these cases turned on whether law enforcement provided the defendants with reasonable assistance in obtaining independent blood tests where the officers retained samples of the blood or the defendant was unable to locate the blood sample placed in his possession.[5]

With little guidance on the issue of whether a defendant who submits to a breathalyzer test has received reasonable affirmative assistance in obtaining an independent test where the defendant did not, in fact, have a blood test, we turn to the facts of this case. Knighton was afforded the opportunity to call both his attorney and the local hospital. Testimony from the troopers indicates that, upon learning of the requirement of a family doctor's authorization and the $52.00 cost for the blood test, Knighton simply abandoned his request for the independent test. Testimony indicated the officers did not deny him further access to the phone, and Knighton could

---

5. *See State v. Wickenhauser,* 309 S.C. 377, 423 S.E.2d 344 (1992) (where defendant submitted to breathalyzer and requested blood test, defendant and officer both received vial of blood but defendant lost track of blood at jail and vial was never located, court found defendant received aid sufficient to constitute reasonable assistance under Implied Consent Statute; court noted whether assistance is subsequently negated by law enforcement is question of fact for jury); *State v. Wilson,* 296 S.C. 73, 370 S.E.2d 715 (1988) (where defendant submitted to breathalyzer test and requested blood test, defendant failed to have blood tested but State introduced evidence of blood analysis, lower court erred in admitting analysis, but evidence was cumulative and not prejudicial and defendant was not denied statutory right to reasonable opportunity to have blood tested by independent person); *State v. Pipkin,* 294 S.C. 336, 364 S.E.2d 464 (1988) (where defendant submitted to breathalyzer and requested blood test, officer seized blood vial requiring defendant to have second vial drawn, defendant refused to have second sample drawn, court held defendant's right to independent blood test under Implied Consent Statute was compromised and suppression of breath and blood tests was mandated); *Town of Fairfax v. Smith,* 285 S.C. 458, 330 S.E.2d 290 (1985) (where defendant submitted to breathalyzer and requested blood test, officer took possession of blood sample for analysis by SLED refusing to allow hospital to analyze blood, statute required assistance by police in securing independent analysis and defendant was not afforded reasonable opportunity under the statute, mandating suppression of breath and blood tests).

have telephoned anyone he wished to avail himself of the necessary money and doctor's order for the test. Both officers testified they would have still been willing to transport Knighton to the hospital if he had so desired.[6]

■ We decline to hold that the officers' failure to themselves locate the money and a doctor's authorization for a blood test without further specific request for assistance by the defendant was a denial of affirmative assistance. Further, although unfortunate that defendants in Knighton's situation encounter obstacles such as these, law enforcement has no control over hospital policy. While an additional burden may be placed on a DUI suspect who is not from the area, this burden is not of law enforcement's making. It would be unreasonable to require the police to affirmatively remove these obstacles themselves, where the statute requires only "reasonable assistance to the person to contact a qualified person to conduct additional tests." *See* Justice Moore's dissent in *State v. Masters*, 308 S.C. at 437, 418 S.E.2d at 555 (finding that allowing suspect to place phone call or assisting him in doing so constitutes "reasonable assistance to contact").[7]

II. Failure to Grant Mistrial for Inappropriate Question by Solicitor

■ Knighton next contends the trial court erred in failing to grant a mistrial after the solicitor elicited testimony from

---

6. Although Knighton testified to the contrary, we find this was a credibility issue resolved by the trial judge against Knighton.

7. Pursuant to Rule 207(b)(7), SCACR, appellant has submitted a supplemental citation, Op. S.C. Atty. Gen., No. 87–78, at 201, to Argument I (trial court erred in failing to suppress breathalyzer test because appellant was denied reasonable assistance in obtaining independent blood test). This opinion deals with the provisions of Section 56–5–2950 regarding the assessment of fees in the administration of chemical tests of breath, blood or urine of individuals arrested for DUI. In 1987, this code section assessed a fifty dollar fee at sentencing against those individuals convicted of DUI, to defray the cost incurred by Law Enforcement in the administration of the chemical tests. This specific provision was deleted by the 1994 amendment to that section. We find no logical nexus between this attorney general's opinion and the issue presented.

Knighton concerning a previous DUI conviction. We disagree.

The record shows Knighton testified on direct examination that the Charleston and Greenville law enforcement centers make videotaping tests available to those arrested for DUI. Knighton stated he requested videotaping in Orangeburg but was advised they lacked the equipment. In response to this statement, the solicitor asked Knighton how he knew the other counties used video equipment. The trial judge immediately instructed the witness to not answer the question. Knighton moved for a mistrial arguing the question implied to the jury that he had a prior conviction for DUI. The trial judge denied the motion, finding his interruption of the question did not allow the possible answer of incrimination to come out before the jury and, in any event, Knighton himself opened the door to the line of questioning.

The granting or denial of a motion for a mistrial lies within the sound discretion of the trial court, whose ruling will not be disturbed on appeal in the absence of an abuse of discretion amounting to an error of law. *State v. Wasson,* 299 S.C. 508, 386 S.E.2d 255 (1989). A mistrial should only be granted in cases of manifest necessity and with the greatest caution for very plain and obvious reasons. *Id.* The burden is on the movant to show not only error, but resulting prejudice. *Id.*

Though there was the potential for prejudicial testimony to have been submitted to the jury, the trial judge prevented any prejudice by instructing Knighton not to answer the solicitor's question. Further, appellant himself opened the door to this inference by testifying about his knowledge of videotaping offered to DUI suspects in two other counties. Accordingly, we find no abuse of discretion.

III.  Failure to Grant Mistrial for Admission of Undisclosed Statement

Knighton next asserts the trial court erred in failing to grant his motion for a mistrial based on an alleged violation of Rule 5, SCRCrimP, where the State failed to disclose a statement allegedly made by Knighton at the time of his arrest. At trial, Trooper King testified as follows:

I told Mr. Knighton that he had failed the sobriety tests that I gave him, and I felt that he was, from his appearance of, and failing of the sobriety tests, that he was under arrest for DUI. He stated he wanted me to give him some more sobriety tests. I told him, you know, I gave him some and he failed them. And he began to, he said, "Well I can," he began to try to do one on his own, by doing a nine step, you know, which, it is a sobriety test that we give, I usually give the same ones that I give all the time, those three. He began to do the nine step, which he tried to walk himself,—

At this point, counsel for Knighton moved for a mistrial based on the fact that there was no mention of any attempted field sobriety tests on Knighton's own initiative in the pretrial discovery. The trial judge denied the motion, finding the trooper was simply relating what happened in the process of the administration of the test.

On appeal, Knighton contends he filed and served a motion pursuant to Rule 5, SCRCrimP, but that the State failed to provide him with the information and statement regarding the alleged additional sobriety tests. He argues the admission of the evidence was prejudicial because it implied that "Knighton had been stopped on an earlier occasion for driving under the influence" and he was thus entitled to a mistrial. We disagree.

Rule 5, SCRCrimP provides in pertinent part:

(a) Disclosure of Evidence by the Prosecution

  (1) Information Subject to Disclosure.

    (A) Statement of Defendant. Upon request by a defendant, the prosecution shall permit the defendant to inspect and copy or photograph: any relevant written or recorded statements made by the defendant, or copies thereof, within the possession, custody or control of the prosecution, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the prosecution; the substance of any oral statement which the prosecution intends to offer in evidence at the trial made by the defendant whether before or after arrest in response to interrogation by any person then known to the defendant to be a prosecution agent.

First, this issue may not be properly preserved for appeal. The record shows counsel raised a general objection to the testimony on the ground that the defense had not been provided with information about Knighton's attempt at independent sobriety tests. Counsel did not argue that he had been deprived of the substance of an oral statement by Knighton. Further, counsel never argued at trial he was entitled to a mistrial because the testimony was too prejudicial in that it implied he had been stopped for DUI on a previous occasion. *See State v. Nichols,* 325 S.C. 111, 481 S.E.2d 118 (1997) (issue may not be raised for first time on appeal, but must have been raised to trial judge to be preserved for appellate review); *State v. Patterson,* 324 S.C. 5, 482 S.E.2d 760 (1997) (objection must be on specific ground; party cannot argue one ground below and another ground on appeal).

In any event, Knighton's statement regarding, and attempt to engage in independent field sobriety tests, was not an oral statement "in response to interrogation" by Trooper King, as provided by the rule. Accordingly, we find no abuse of discretion in the trial court's denial of appellant's motion for mistrial on this basis.

IV. Trial Court's Refusal to Charge Requested Instruction

■ Lastly, Knighton contends the trial judge erred in failing to charge a requested instruction on "reasonable assistance" and "reasonable opportunity." Knighton's record on appeal does not contain the jury charges given by the court or Knighton's timely objection to the charge before the jury began deliberation. We therefore decline to reach this issue. *See State v. Hutto,* 279 S.C. 131, 303 S.E.2d 90 (1983) (appellant has burden of presenting an adequate record which is sufficiently complete to permit this Court to review lower court's actions); *State v. Whipple,* 324 S.C. 43, 476 S.E.2d 683 (1996) (failure to object to charge as given or to request additional charge when given opportunity to do so constitutes waiver of right to complain on appeal); Rule 20(b), SCRCrimP ("Notwithstanding any request for legal instructions, the parties shall be given the opportunity to object to the giving or failure to give an instruction before the jury retires, but out of the hearing of the jury.... Failure to object in accordance with this rule shall constitute a waiver of objection"); *State v.*

*Burton,* 302 S.C. 494, 397 S.E.2d 90 (1990) (charge is sufficient if, when considered as a whole, it covers law applicable to case).

For the foregoing reasons, appellant's conviction is **AFFIRMED.**

CONNOR and HEARN, JJ., concur.