# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

The State, Respondent,

v.

Tammy Dianne Brown, Appellant.

Appellate Case No. 2018-000988

―――――――――

Appeal From Clarendon County
R. Ferrell Cothran, Jr., Circuit Court Judge

―――――――――

Opinion No. 5914
Heard September 15, 2021 – Filed May 25, 2022

―――――――――

## AFFIRMED

―――――――――

Appellate Defender Adam Sinclair Ruffin, of Columbia,
for Appellant.

Attorney General Alan McCrory Wilson and Assistant
Attorney General Jonathan Scott Matthews, both of
Columbia; and Solicitor Ernest Adolphus Finney, III, of
Sumter, for Respondent.

―――――――――

**KONDUROS, J.:** Tammy Dianne Brown appeals her convictions and sentences
for felony driving under the influence (DUI) resulting in death and felony DUI
resulting in great bodily injury. On appeal, Brown argues the trial court erred in
(1) refusing to quash or dismiss the indictments against her because they did not
allege the particular traffic violation the State sought to prove as an essential
element of each offense; (2) admitting into evidence the blood sample taken from
her at the hospital because she was not provided an independent sample and law

enforcement did not offer her affirmative assistance; and (3) allowing testimony regarding her blood alcohol level from a sample obtained by law enforcement at the hospital when the collection of the sample was not recorded by video. We affirm.

**FACTS/PROCEDURAL HISTORY**

On August 30, 2014, around 11:56 p.m, Brown was driving a vehicle involved in a two-car collision in Clarendon County. The driver of the other vehicle died at the scene of the accident, and the passenger of that vehicle was unresponsive but breathing at the scene and was transported to a hospital.

As a result of the accident, a Clarendon County grand jury indicted Brown for felony DUI resulting in death and felony DUI resulting in great bodily injury. Prior to the jury being sworn, Brown "move[d] to dismiss the indictment[s] for reasons concerning the sufficiency of the indictment[s] as it relate[d] to due process." The indictments alleged "while driving a vehicle under the influence of alcohol, drugs, or a combination . . . Brown did an act forbidden by law or neglected a duty imposed by law in the driving of said vehicle . . . all in violation of [s]ection 56-5-2945" of the South Carolina Code (2018). Brown argued the indictments were required to have "state[d] with particularity the act forbidden by law or duty imposed by law" on which the State planned to rely to support the charges. Brown asserted that because the indictments did not specifically point to the act on which the State would rely, the indictments were flawed and should be dismissed. The State countered, asserting an indictment's language was sufficient if it tracked the language of a statute and both of Brown's indictments tracked the statute she was charged with violating. The trial court denied Brown's motion to quash or dismiss the indictments, finding that as long as an indictment tracked the language of a statute, it was sufficient and both Brown's indictments tracked the statute.

The trial court conducted a suppression hearing regarding Brown's blood sample and the voluntariness of her statements to law enforcement.[1] Trooper Jeffrey Minnix, of the South Carolina Highway Patrol, testified he was the investigating trooper assigned to work the accident. He stated that when he arrived on scene, he activated his body microphone and his camera and went to the truck involved in

---

[1] The suppression hearing was conducted on the second day of trial, after a few witnesses testified, instead of at the beginning of trial because the trial court wished to accommodate the jury.

the accident. Trooper Minnix indicated that an individual with the fire department informed him the driver of the truck was dead on arrival and the passenger was being extricated from the truck. He stated he walked towards Brown's car, which was some distance away, and someone from the fire department informed him Brown was in an ambulance further down the road. He asserted he went to the ambulance and as emergency medical services (EMS) attended to Brown, he spoke with her to determine how the collision occurred. Trooper Minnix recounted his conversation with Brown, stating:

> [Brown] told me she [was] coming from a friend's house. At that point in time I [could] smell a strong odor of alcohol[ic] beverage coming from her person. I asked her if she had anything to drink. She said, yes, she had two tequila shots. Then she quickly changed it to, no, she had two wine coolers instead. . . . I asked her what was in the clear cup in the vehicle at the time. And she said a friend of hers made her a drink to go. She believed it was a wine cooler. . . . At that point in time EMS was ready to take her to the ER . . . .

He confirmed he had not advised Brown of her *Miranda*[2] rights at that time because she was not in custody. He recalled Brown had several scrapes and scratches but needed to be brought to the hospital to ensure she had no internal trauma. Trooper Minnix asserted he stayed at the scene, finished his investigation, and then went to the hospital to speak with Brown again. He testified that at the hospital, Brown told him the accident occurred because the individuals in the truck were attempting to pass someone and they hit her head on. He confirmed that at the time Brown told him this, she still had not been placed under arrest and therefore had not been advised of her *Miranda* rights. Trooper Minnix stated that after Brown recounted her story, she was placed under arrest for felony DUI and advised of her *Miranda* rights and her implied consent rights. He asserted although Brown had previously agreed to give a blood sample, after she was placed under arrest, she no longer wanted to provide a sample and became "belligerent" and started yelling. Trooper Minnix testified Brown appeared to understand the rights as they were read to her and continued to speak after she had been advised of those rights. He stated Corporal Jennifer Paige Dubose, also with South Carolina Highway Patrol and with him at the hospital, left to obtain a search warrant for Brown's blood and urine samples. He confirmed the search warrant

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

was obtained and blood and urine samples were taken from Brown.  Trooper Minnix testified the blood sample was taken in his presence and the urine sample was taken in Corporal Dubose's presence.

On cross-examination, Trooper Minnix stated that although he had turned his body microphone on when he arrived at the scene, the microphone did not record his conversation with Brown because his vehicle was too far away.  He confirmed Brown initially told him she had two tequila shots but she then stated she had two wine coolers instead.  He stated he did not conduct a field sobriety test at the scene because Brown was in the back of an ambulance and EMS wanted to transport her to the hospital.  He testified he did not offer Brown additional affirmative assistance to obtain an independent blood sample because she was at the hospital.  He asserted because Brown was already at the hospital, she only needed to ask the nurse to provide her with an independent sample.

On recross-examination, Trooper Minnix identified the implied consent form he read to Brown and acknowledged Brown refused to sign the form.

Corporal Dubose testified she was Trooper Minnix's training officer and arrived at the scene of the vehicle collision with him.  Corporal Dubose stated Trooper Minnix informed her he smelled alcohol coming from Brown and Brown admitted she had been drinking and the amount of alcohol she had consumed.  Corporal Dubose asserted that when she and Trooper Minnix initially spoke to Brown at the hospital, Brown was not in custody at the time because she wanted to confirm that Brown was impaired by alcohol.  Corporal Dubose averred they both made the determination Brown was impaired.  Corporal Dubose recalled that once they read Brown her implied consent rights, Brown became irritated and refused to voluntarily provide a blood sample.  Corporal Dubose confirmed she secured the search warrant to obtain Brown's blood sample.  Corporal Dubose indicated two vials of blood and one container of urine were obtained from Brown.  Corporal Dubose testified Brown never verbalized a request to have someone conduct an independent test of her blood or asked for assistance in obtaining an independent test.  Corporal Dubose acknowledged that on the South Carolina Law Enforcement Division (SLED) urine/blood collection report (the collection report), the line that stated "a blood sample is requested by the subject for an independent test" had a check mark beside it.  However, Corporal Dubose stated Angela Floyd, the phlebotomist who took the samples, checked the box by mistake.  Corporal Dubose reiterated Brown did not verbalize any request to have an independent test conducted on her blood.  Corporal Dubose testified that to her knowledge, Brown

never contacted highway patrol again to inquire whether or not she could have an independent analysis performed on her blood sample.

Brown testified the person who drew her blood at the hospital told her she could get a sample of her blood and she said "okay." She stated she wanted her own sample because she did not really trust the hospital. Brown asserted that neither Trooper Minnix nor Corporal Dubose assisted her in obtaining an independent test of her blood sample. On cross-examination, Brown stated she gave the nurse permission to obtain a blood sample. Brown testified the nurse told her "that they were [going to take] some blood samples and I [could] have my own done. . . . I already knew I was go[ing to] let [my doctor] do it . . . ." She stated law enforcement told her they were going to take her blood and she had a right to have her own test done, and she said "okay" and then turned her head away from the blood being drawn.

At the conclusion of the suppression hearing, the trial court found Brown voluntarily made her statement and was not coerced or threatened in any way. The trial court also found law enforcement provided Brown with substantial assistance and Brown did not ask for an independent blood test. The court indicated Brown could argue to the jury that she had checked the box for an independent blood test and had not gotten it.

At trial, Billy Ward, a firefighter, testified he responded to a vehicle collision on August 30, 2014. He stated two individuals were in a truck and Brown was at a sedan. He asserted the driver of the truck was "unconscious, unresponsive[, and] not breathing" and the passenger of the truck was unresponsive but breathing. Ward testified Brown was out of her vehicle and able to walk around.

Bucky Mock was the coroner of Clarendon County at the time of trial. He testified the previous coroner, Hayes Samuels, had responded to the scene of the accident. Mock stated Samuels pronounced the driver of the truck dead at 11:56 p.m. at the scene of the accident.

Dr. Mark Reynolds, an expert in trauma surgery, stated that at the hospital on August 31, 2014, he attended to the passenger from the truck for multiple traumas resulting from a vehicular crash. Dr. Reynolds testified the passenger suffered severe traumatic brain injuries as a result of the crash but survived.

Trooper Minnix testified to the same information he provided in the suppression hearing. He explained he read Brown her *Miranda* rights and implied consent

rights at the hospital and informed her she was under arrest for felony DUI. He reiterated Brown initially agreed to provide a blood sample; however, she refused once she was arrested. Trooper Minnix acknowledged that one of the advisements on the implied consent rights form was that a suspect had the right to have an additional, independent test administered if the suspect wanted one. He explained that if a suspect wanted an independent test, the highway patrol would provide affirmative assistance and transport the suspect to the closest medical facility. Trooper Minnix stated that in this case, he did not need to provide additional affirmative assistance because Brown was already at the hospital. He asserted Brown did not convey any desire to have an additional independent test done. He stated the highway patrol provided Brown with the collection report and she refused to sign it. Trooper Minnix confirmed that during the course of advising Brown of her rights, she was notified of her right to obtain an independent test of her blood. He reasserted Brown did not indicate to him or anyone in his presence that she wanted an independent test.

On cross-examination, Trooper Minnix confirmed that the collection report had a check mark on it next to the sentence that indicated Brown requested a sample of blood for her own independent test; however, he stated law enforcement did not make the check mark and Brown never asked him or Corporal Dubose for a sample to obtain an independent test. He testified the nurse who took the blood sample "may have inadvertently checked the box."

On redirect, Trooper Brown stated that if requested, the highway patrol had the responsibility to assist an individual who had been arrested for DUI in obtaining an individual sample of the person's blood by taking them to the nearest medical facility. He confirmed that was the only assistance the highway patrol had a responsibility to provide regarding a blood sample.

Floyd testified she worked at Clarendon Memorial Hospital in 2014 and took the sample of Brown's blood. She confirmed she filled out part of the collection report. She testified she made the check mark indicating Brown requested an independent blood sample in error. Floyd asserted Brown never indicated in her presence she wanted a blood sample for an independent test.

Stacey Matthew, an expert in toxicology, testified that while she worked for SLED, she received Brown's blood and urine specimens. She confirmed the samples remained in the proper chain of custody and no one had tampered with the evidence. Brown objected to Matthew testifying to the blood alcohol concentration of her samples, stating two breaks in the chain of custody had

occurred. Additionally, Brown argued the samples were inadmissible because the act of the blood being drawn was not videotaped, which she asserted section 56-5-2950(B) of the South Carolina Code (2018) required. The State asserted the video recording section 56-5-2950(B) mentioned related to section 56-5-2953 of the South Carolina Code (2018), the statute concerning incident site and breath test site and video recording. The trial court held the State met its burden concerning the chain of custody and the statute did not require the blood draw to be videotaped. Matthew testified she found Brown's alcohol concentration to be 0.210.

Kelly Bugden, an expert in toxicology employed by SLED, testified she analyzed Brown's blood sample and determined it had a blood alcohol concentration of 0.210. She confirmed there was correlation between a person's blood alcohol concentration and intoxication.

Timothy Grambow, an expert in forensic toxicology and a senior toxicologist at SLED, testified he analyzed Brown's blood sample and reported a blood alcohol level of 0.210 and a positive result for Xanax. Brown objected to Grambow testifying regarding the "condition of a person in general where their blood concentration level was at [0.210]." The trial court overruled the objection. Grambow stated that anyone, regardless of age, sex, or size, would have been too impaired to drive at a 0.210 blood alcohol level.

Brown testified she did not remember having a conversation with Trooper Minnix at the hospital. She stated a nurse informed her they needed to take her blood because she "kill[ed] somebody." Brown stated she told the nurse to take the blood because she was tired and ready to go home. Brown confirmed the nurse informed her she could obtain her own blood sample "to be tested by someone else."

On cross-examination, the State asked Brown if she remembered telling a highway patrolman that she wanted an independent sample of blood and Brown stated she "told the nurse that." Brown recalled the conversation with the nurse, stating "I remember some people nurse, whatever ask me can she draw[] some blood. At first I said, no . . . . Then later on, later on . . . someone say, well, you can have your own test and I say fine." When asked if she said anything other than fine, Brown answered, "No, because that's their procedure. I can't question their procedures, that's what they do, that's what they do." Brown asserted the nurse told Brown she could have her own blood sample but she never saw a sample. Brown testified someone informed her she was entitled to have her own independent blood test drawn and she said "fine."

The jury found Brown guilty as indicted.  The trial court sentenced Brown to concurrent sentences of fifteen years' imprisonment for felony DUI resulting in death and twelve years' imprisonment for felony DUI resulting in great bodily injury.  This appeal followed.

**STANDARD OF REVIEW**

"In criminal cases, the appellate court sits to review errors of law only."  *State v. Baccus*, 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006).  Thus, an appellate "[c]ourt is bound by the trial court's factual findings unless they are clearly erroneous."  *Id.*

**LAW/ANALYSIS**

## I.    Indictments

Brown argues the trial court erred by denying her motion to dismiss the indictments against her by improperly relying on *State v. Campbell*.[3]  Brown asserts *Campbell* held "an indictment for felony DUI was sufficient to confer subject matter jurisdiction . . . even though it did not state with particularity the underlying traffic offense [on] which the [S]tate intended to rely" but applied "only in the context of a guilty plea."  Brown contends the trial court should have instead relied on *State v. Grampus*,[4] which noted "that an indictment in a felony DUI case must include the underlying traffic offense the [S]tate intends to rely on."  Brown argues that because her indictment "did not state with particularity 'the act forbidden by law' on which the State would rely, [she] was not sufficiently notified of what she would be required to defend at trial."  We disagree.

"The trial court's factual conclusions as to the sufficiency of an indictment will not be disturbed on appeal unless so manifestly erroneous as to show an abuse of discretion."  *State v. Tumbleston*, 376 S.C. 90, 94, 654 S.E.2d 849, 851 (Ct. App.

---

[3] 361 S.C. 529, 605 S.E.2d 576 (Ct. App. 2004), *overruled on other grounds by State v. Gentry*, 363 S.C. 93, 610 S.E.2d 494 (2005) (overruling cases to the extent they combine the concept of the sufficiency of an indictment and the concept of subject matter jurisdiction).

[4] 288 S.C. 395, 343 S.E.2d 26 (1986), *abrogated on other grounds by State v. Easler*, 327 S.C. 121, 489 S.E.2d 617 (1997), *overruled on other grounds by State v. Greene*, 423 S.C. 263, 814 S.E.2d 496 (2018).

2007).  "An abuse of discretion occurs when the trial court's ruling is based on an error of law or a factual conclusion without evidentiary support."  *Id.*

> Every indictment shall be deemed and judged sufficient and good in law which, in addition to allegations as to time and place, as required by law, charges the crime substantially in the language of the common law or of the statute prohibiting the crime or so plainly that the nature of the offense charged may be easily understood and, if the offense be a statutory offense, that the offense be alleged to be contrary to the statute in such case made and provided.

S.C. Code Ann. § 17-19-20 (2014).  "An indictment is sufficient when it uses substantially the same language contained in the statute prohibiting the crime charged, or when it is described in such a way that the nature of the charge is plainly understood."  *Campbell*, 361 S.C. at 533, 605 S.E.2d at 579.

"A challenge to the sufficiency of an indictment must be made before the jury is sworn."  *Tumbleston*, 376 S.C. at 96, 654 S.E.2d at 852.

> If the objection is timely made, the [trial] court should evaluate the sufficiency of the indictment by determining whether (1) the offense is stated with sufficient certainty and particularity to enable the court to know what judgment to pronounce, and the defendant to know what he is called upon to answer and whether he may plead an acquittal or conviction thereon; and (2) whether it apprises the defendant of the elements of the offense intended to be charged.

*Id.* at 96-97, 654 S.E.2d at 852.

"In determining whether an indictment meets the sufficiency standard, the court must look at the indictment with a practical eye in view of all the surrounding circumstances."  *Gentry*, 363 S.C. at 103, 610 S.E.2d at 500.  An indictment is sufficient if "it contains the necessary elements of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet."  *Campbell*, 361 S.C. at 533, 605 S.E.2d at 579 (quoting *Browning v. State*, 320 S.C. 366, 368, 465 S.E.2d 358, 359 (1995), *overruled on other grounds by*

*Gentry*, 363 S.C. at 105-06, 610 S.E.2d at 501-02 (overruling to the extent it combined the concepts of the sufficiency of an indictment and subject matter jurisdiction)).  "[W]hether the indictment could be more definite or certain is irrelevant."  *Gentry*, 363 S.C. at 103, 610 S.E.2d at 500.  "Therefore, an indictment passes legal muster when it charges the crime substantially in the language of the statute prohibiting the crime or so plainly that the nature of the offense charged may be easily understood."  *Tumbleston*, 376 S.C. at 98, 654 S.E.2d at 853.

"The indictment must state the offense with sufficient certainty and particularity to enable the court to know what judgment to pronounce, and the defendant to know what he is called upon to answer."  *State v. Reddick*, 348 S.C. 631, 635, 560 S.E.2d 441, 443 (Ct. App. 2002).  "The true test of the sufficiency of an indictment is not whether it could be made more definite and certain, but whether it contains the necessary elements of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet."  *Id.* (quoting *State v. Beam*, 336 S.C. 45, 50, 518 S.E.2d 297, 300 (Ct. App. 1999)).

In the present case, Brown was indicted for felony DUI resulting in death and felony DUI resulting in great bodily injury.  The language of both indictments included the following: "while driving a vehicle under the influence of alcohol, drugs, or a combination . . . Brown did an act forbidden by law or neglected a duty imposed by law in the driving of said vehicle . . . all in violation of [s]ection 56-5-2945" of the South Carolina Code.  Section 56-5-2945, the section Brown was indicted for violating, states:

> A person who, while under the influence of alcohol, drugs, or the combination of alcohol and drugs, drives a motor vehicle and when driving a motor vehicle does any act forbidden by law or neglects any duty imposed by law in the driving of the motor vehicle, which act or neglect proximately causes great bodily injury or death to another person, is guilty of the offense of felony driving under the influence . . . .

S.C. Code Ann. § 56-5-2945(A) (2018).

Because the indictments followed the language of the statutes prohibiting the crimes, the trial court did not err in denying Brown's motion to dismiss or quash the indictments.  The indictments were sufficient to make Brown aware she was being charged with the crimes of felony DUI resulting in death and felony DUI

resulting in great bodily injury. The language of the indictments followed the language of the statute, and the indictments were sufficient to enable the trial court to know what judgment to pronounce and Brown to know what to answer to at trial and the elements of the offense with which she was charged.

Further, the trial court did not err in relying on *Campbell*. Like Brown, the defendant in *Campbell* was charged with felony DUI resulting in death. 361 S.C. at 531, 605 S.E.2d at 578. In *Campbell*, the court held an indictment was sufficient if it tracked the language of the statute. *Id.* at 533, 605 S.E.2d at 579. Here, both of Brown's indictments tracked the language of section 56-5-2945(A). Brown argues the *Campbell* holding was limited to guilty pleas; however, the *Campbell* court did not appear to limit its holding to guilty pleas but instead seemed to rely on the fact that the defendant pled guilty as an additional reason she was aware of the charge against her. *See id.* ("Even a cursory reading of the indictment . . . shows it contains virtually identical language to that contained in the statute defining the offense. *In addition, because Campbell pled guilty*, it is clear she was aware of the nature of the charge against her." (emphasis added)).

Moreover, despite the fact that *Gentry* overturned *Campbell* on other grounds, *Gentry*, which did involve a trial, reiterated the same language from *Campbell*. *Compare Gentry*, 363 S.C. at 102-03, 610 S.E.2d at 500 ("[T]he [trial] court should judge the sufficiency of the indictment by determining whether (1) the offense is stated with sufficient certainty and particularity to enable the court to know what judgment to pronounce, and the defendant to know what he is called upon to answer and whether he may plead an acquittal or conviction thereon; and (2) whether it apprises the defendant of the elements of the offense that is intended to be charged."), *and id.* at 103, 610 S.E.2d at 500 ("[W]hether the indictment could be more definite or certain is irrelevant."), *with Campbell*, 361 S.C. at 533, 605 S.E.2d at 578-79 ("The general rule regarding the adequacy of an indictment is that '[a]n indictment is sufficient if the offense is stated with sufficient certainty and particularity to enable the court to know what judgment to pronounce, and the defendant to know what he is called upon to answer and whether he may plead an acquittal or conviction thereon.' Furthermore, '[t]he true test of the sufficiency of an indictment is not whether it could be made more definite and certain, but whether it contains the necessary elements of the offense intended to be charged and sufficiently apprises the defendant of what he must be prepared to meet.'" (alterations by court) (first quoting *State v. Adams*, 354 S.C. 361, 364, 580 S.E.2d 785, 791 (Ct. App. 2003); then quoting *Browning*, 320 S.C. at 368, 465 S.E.2d at 359)).

This court in *Tumbleston*, which involved a jury trial and was decided after *Gentry*, also used similar language as that from *Campbell*. *Compare Tumbleston*, 376 S.C. at 98, 654 S.E.2d at 853 ("[A]n indictment passes legal muster when it charges the crime *substantially in the language of the statute* prohibiting the crime or so plainly that the nature of the offense charged may be easily understood." (emphasis added)), *with Campbell*, 361 S.C. at 533, 605 S.E.2d at 579 ("An indictment is sufficient when it uses *substantially the same language contained in the statute* prohibiting the crime charged, or when it is described in such a way that the nature of the charge is plainly understood." (emphasis added)). Thus, the trial court did not err in relying on *Campbell*.

Additionally, *Grampus*, the case on which Brown asserts the trial court should have relied, did not hold in the body of the opinion that an indictment "must include the underlying traffic offense." Instead, the *Grampus* court mentioned the sufficiency of an indictment in a footnote, noting *Grampus* did not argue the issue of the sufficiency of the indictment on its face. 288 S.C. at 397 n.2, 343 S.E.2d at 27 n.2 ("Appellant has not argued the sufficiency of the indictment on its face; however, we note that the indictment must state with particularity the 'act forbidden by law or . . . duty imposed by law' which will be relied on by the State to support the felony D.U.I. charge." (alteration by court) (quoting § 56-5-2945)).

Accordingly, the trial court did not err in finding Brown's indictments were sufficient.

## II.    Affirmative Assistance

Brown argues the trial court erred in admitting her blood sample into evidence because she requested an independent sample and law enforcement did not offer her affirmative assistance to obtain the sample. Brown contends she testified she requested a sample for an independent test and the fact that the collection report had a check mark next to the line stating she requested a sample for an independent test corroborated her testimony. She asserts that despite the fact she was already at the hospital, Trooper Minnix and Corporal Dubose failed to provide the required affirmative assistance because they should have ensured she was provided with her own sample to take to a testing location of her choosing. We disagree.

"A trial [court]'s decision to admit or exclude evidence is within [its] discretion and will not be disturbed on appeal absent an abuse of discretion." *State v. Frey*, 362 S.C. 511, 515-16, 608 S.E.2d 874, 877 (Ct. App. 2005). "An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are

controlled by an error of law." *State v. Pagan*, 369 S.C. 201, 208, 631 S.E.2d 262, 265 (2006).

> The arresting officer shall provide affirmative assistance
> to the person to contact a qualified person to conduct and
> obtain additional tests. Affirmative assistance, at a
> minimum, includes providing transportation for the
> person to the nearest medical facility which performs
> blood tests to determine a person's alcohol concentration.
> If the medical facility obtains the blood sample but
> refuses or fails to test the blood sample to determine the
> person's alcohol concentration, SLED shall test the blood
> sample and provide the result to the person and to the
> arresting officer. Failure to provide affirmative
> assistance upon request to obtain additional tests bars the
> admissibility of the breath test result in a judicial or
> administrative proceeding.

S.C. Code Ann. § 56-5-2950(E) (2018).

> The person tested or giving samples for testing may have
> a qualified person of the person's own choosing conduct
> additional tests at the person's expense and must be
> notified in writing of that right. A person's request or
> failure to request additional blood or urine tests is not
> admissible against the person in the criminal trial. The
> failure or inability of the person tested to obtain
> additional tests does not preclude the admission of
> evidence relating to the tests or samples obtained at the
> direction of the law enforcement officer.

S.C. Code Ann. § 56-5-2950(D) (2018).

"The purpose of . . . [section] 56-5-2950[(E)] 'is to permit an accused person to gather independent evidence to submit in reply to that of the prosecuting authority.'" *State v. Harris*, 311 S.C. 162, 166, 427 S.E.2d 909, 911 (Ct. App. 1993) (quoting *Town of Fairfax v. Smith*, 285 S.C. 458, 460, 330 S.E.2d 290, 290 (1985)). "Whether one receives affirmative assistance [that] is reasonable under the statute depends on the circumstances of each case." *State v. Knighton*, 334 S.C. 125, 131, 512 S.E.2d 117, 120 (Ct. App. 1999).

The trial court did not err by admitting into evidence the analysis of Brown's blood sample. Trooper Minnix and Corporal Dubose provided Brown with affirmative assistance as required by section 56-5-2950(E). Although the collection report had a check mark that indicated Brown requested an independent blood sample, Floyd, Trooper Minnix, and Corporal Dubose's testimonies indicated it was checked in error. Brown was informed she could obtain an independent sample of her blood to take to a testing location of her choosing, and she acknowledged she told the nurse "fine" and "okay." Trooper Minnix and Corporal Dubose testified Brown did not request an independent blood sample in their presence. Additionally, Floyd stated Brown never requested an independent sample when she took Brown's blood. Based on all of the testimony and the fact that Brown refused to sign the collection report, the trial court did not abuse its discretion in finding Brown did not request an independent blood sample.

Moreover, Trooper Minnix and Corporal Dubose provided affirmative assistance to Brown to obtain an independent blood sample because they informed Brown of her rights, she was present at a hospital where she could have requested a sample of her blood, and they did not do anything to prevent Brown from obtaining an independent sample. *See* § 56-5-2590(E) ("Affirmative assistance, at a minimum, includes providing transportation for the person to the nearest medical facility which performs blood tests to determine a person's alcohol concentration."); *Knighton*, 334 S.C. at 131, 512 S.E.2d at 120 ("Whether one receives affirmative assistance [that] is reasonable under the statute depends on the circumstances of each case."). Thus, the trial court did not err in denying Brown's motion to suppress the results of Brown's blood sample analysis on this basis because Trooper Minnix and Corporal Dubose provided Brown with the required affirmative assistance for obtaining an independent blood sample.

### III. VIDEO RECORDING REQUIREMENTS

Brown argues the trial court erred in allowing testimony regarding her blood alcohol level from a blood sample obtained at the hospital. She contends that law enforcement violated section 56-5-2950(B) by not video recording the act of drawing her blood. Brown asserts the statute "provide[s] that no tests or samples could be obtained unless video recording equipment was activated prior to the commencement of the testing procedure." We disagree.

"A trial [court]'s decision to admit or exclude evidence is within [its] discretion and will not be disturbed on appeal absent an abuse of discretion." *Frey*, 362 S.C. at

515-16, 608 S.E.2d at 877. "An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law." *Pagan*, 369 S.C. at 208, 631 S.E.2d at 265.

The implied consent statute provides: "No tests may be administered or samples obtained unless, upon activation of the video recording equipment and prior to the commencement of the testing procedure, the person has been given a written copy of and verbally informed" of his or her implied consent rights.[5] S.C. Code Ann. § 56-5-2950(B) (2018).

Section 56-5-2953 mandates the video recording of a driver's "conduct at the incident site and the breath test site" if the driver violates section 56-5-2930, -2933, or -2945 of the South Carolina Code (2018). S.C. Code Ann. § 56-5-2953(A) (2018). The statute provides the following requirements for the recording:

> (1)(a) The video recording at the incident site must:
>
>> (i) not begin later than the activation of the officer's blue lights;
>>
>> (ii) include any field sobriety tests administered; and
>>
>> (iii) include the arrest of a person for a violation of [s]ection 56-5-2930 or [s]ection 56-5-2933, or a probable cause determination in that the person violated [s]ection 56-5-2945, and show the person being advised of his [*Miranda*] rights.

---

[5] Those rights are the person does not have to take the test or give the samples, but if the person refuses, the person's privilege to drive must be suspended and the refusal may be used in court; if the person takes the test or gives the samples and has a certain alcohol concentration, the person's privilege to drive must be suspended for at least one month; the person has the right to have independent tests conducted and to request a contested case hearing; and if the person does not request a contested case hearing or if the suspension is upheld, the person shall enroll in an alcohol and drug program. *See* § 56-5-2950(B).

> > > (b) A refusal to take a field sobriety test does not constitute disobeying a police command.
>
> > (2) The video recording at the breath test site must:
>
> > > (a) include the entire breath test procedure, the person being informed that he is being video recorded, and that he has the right to refuse the test;
>
> > > (b) include the person taking or refusing the breath test and the actions of the breath test operator while conducting the test; and
>
> > > (c) also include the person's conduct during the required twenty-minute pre-test waiting period, unless the officer submits a sworn affidavit certifying that it was physically impossible to video record this waiting period.

§ 56-5-2953(A).

"Whe[n] the statute's language is plain and unambiguous, and conveys a clear and definite meaning, the rules of statutory interpretation are not needed and the court has no right to impose another meaning." *State v. Jacobs*, 393 S.C. 584, 587, 713 S.E.2d 621, 622 (2011) (quoting *Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000)). "In interpreting a statute, '[w]ords must be given their plain and ordinary meaning without resort to subtle or forced construction to limit or expand the statute's operation.'" *State v. Gordon*, 414 S.C. 94, 98, 777 S.E.2d 376, 378 (2015) (alteration by court) (quoting *Sloan v. Hardee*, 371 S.C. 495, 499, 640 S.E.2d 457, 459 (2007)). "All rules of statutory construction are subservient to the one that the legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in light of the intended purpose of the statute." *State v. Hilton*, 406 S.C. 580, 585, 752 S.E.2d 549, 551 (Ct. App. 2013) (quoting *State v. Sweat*, 386 S.C. 339, 350, 688 S.E.2d 569, 575 (2010)). "Courts will reject a statutory interpretation which would lead to a result so plainly absurd that it could not have been intended by the Legislature or would

defeat the plain legislative intention." *Sweat*, 386 S.C. at 351, 688 S.E.2d at 575. "The legislature is presumed to intend that its statutes accomplish something." *State v. Long*, 363 S.C. 360, 364, 610 S.E.2d 809, 811 (2005). "A statute should be so construed that no word, clause, sentence, provision or part shall be rendered surplusage, or superfluous." *Sweat*, 386 S.C. at 351, 688 S.E.2d at 575 (quoting *In re Decker*, 322 S.C. 215, 219, 471 S.E.2d 462, 463 (1995)).

"Statutes must be read as a whole and sections that are part of the same general statutory scheme must be construed together and each given effect, if reasonable." *State v. Prince*, 335 S.C. 466, 472, 517 S.E.2d 229, 232 (Ct. App. 1999). A court "should consider, not merely the language of the particular clause being construed, but the word and its meaning in conjunction with the purpose of the whole statute and the policy of the law." *State v. Landis*, 362 S.C. 97, 102, 606 S.E.2d 503, 505-06 (Ct. App. 2004).

In 2008, the legislature amended section 56-5-2950 to add the phrase on which Brown relies—"upon activation of the video recording equipment and prior to the commencement of the testing procedure."[6, 7, 8] Act No. 201, 2008 S.C. Acts 1644, 1674. The act that amended section 56-5-2950 in no way suggests the legislature intended to mandate videotaping of blood and urine tests. *See* Act No. 201, 2008 S.C. Acts 1644, 1674. The amended version simply specifies the time frame when the implied consent rights[9] must be provided, both in written form and orally, to a driver—before the testing procedure begins. § 56-5-2950(B). This clause does not create a requirement to video record all types of samples being taken. The purpose of subsection B was to lay out certain rights a driver has relating to implied consent.

---

[6] Prior to the amendment, the portion of the statute this phase was added to stated: "No tests may be administered or samples obtained unless the person has been informed in writing" of his or her implied consent rights. S.C. Code Ann. § 56-5-2950(a) (2006).
[7] The act also added that a driver must be verbally informed of his or her implied consent rights, in addition to being given a written copy, whereas before a driver only had to be given a written copy. Act No. 201, 2008 S.C. Acts 1644, 1674.
[8] The statute was again amended in 2014 but made no changes relevant to the issue here. *See* Act 158, 2014 S.C. Acts 1994, 2027.
[9] At trial, Brown's counsel stated he understood Brown had received the implied consent warnings.

Section 56-5-2953 specifies in detail that a recording must be done for breath testing at the incident site.  In stating what the act amended in section 56-5-2950, the act did not indicate it was creating a new requirement to record tests in addition to breath testing at the incident site. [10]  If the legislature had intended to establish video recording for all tests, including blood and urine samples, it would have done so in a more explicit way, including laying out the procedures as it did in section 56-5-2953.  *See Creswick v. Univ. of S.C.*, 434 S.C. 77, 82-83, 862 S.E.2d 706, 708-09 (2021) (recognizing that the legislature was "capable of drafting a provision prohibiting all mask mandates" when one proviso applying to public K-12 schools clearly demonstrated the legislature's intent to prohibit the use of state funds to require any mask mandate in those settings, but another provision applying to public institutions of higher education used different language that left "little doubt that [the higher education proviso] was not intended to prohibit all mask mandates at public institutions of higher education, but only, as its terms specifically provide, mask mandates for the unvaccinated"); *Byrd v. Irmo High Sch.*, 321 S.C. 426, 433-

---

[10] The act stated it was

> amend[ing] section 56-5-2950, relating to a driver's implied consent to testing for alcohol or drugs, so as to make technical changes, to provide when breath samples must be collected under this provision, to delete the provision that provides that an officer may not require additional tests of a person under certain circumstances, to delete the term "Department of Public Safety" and replace it with the term "South Carolina Criminal Justice Academy[,"] to revise the provisions that provide the procedures for administering breath tests or obtaining samples, to revise the information that a person charged with violating this provision must be given, to provide the circumstances in which a person must pay for the cost of tests performed under this section and provide for the disbursement of these monies, to delete the provision that provides that a certain level of alcohol concentration is a violation of section 56-5-2933, and to revise the circumstances in which certain evidence may be excluded in a proceeding that occurs under this section
> . . . .

Act No. 201, 2008 S.C. Acts 1644, 1648 (text altered for capitalization).

34, 468 S.E.2d 861, 865 (1996) (holding when one provision does not include a right that is included in a related provision, a right will not be implied when it does not exist); *Est. of Guide v. Spooner*, 318 S.C. 335, 338, 457 S.E.2d 623, 624 (Ct. App. 1995) (noting that a "provision expressly applie[d] to a 'formal testacy or appointment proceeding commenced in this state' as opposed to an informal proceeding" because "[i]t is reasonable to assume that if the legislature had intended the statute to apply to both formal and informal proceedings, it would have said so either by stating that it applied to any testacy or appointment proceeding, or by expressly including informal proceedings in the first sentence"). Accordingly, the trial court did not err in finding section 56-5-2950 did not require video recording the taking of the blood sample. Therefore, the trial court did not abuse its discretion in admitting the blood sample as evidence, and we affirm that decision.

## CONCLUSION

Based on the foregoing, the trial court did not err in denying Brown's motion to quash the indictment. Additionally, the trial court did not abuse its discretion in denying Brown's motion to suppress the blood sample. Therefore, Brown's convictions of felony DUI resulting in death and felony DUI resulting in great bodily injury are

**AFFIRMED.**

**HILL and HEWITT, JJ., concur.**